THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MARY LEE TOWNSEL, Appellant.

Fourth Department, April 11, 1962.

*Sigmund Schwartz* for appellant.

*Carman F. Ball, District Attorney* (*Irma R. Thorn* of counsel), for respondent.

*Per Curiam.* On August 14, 1960, one Spicer died as a result of stab wounds concededly inflicted upon him by defendant. The principal defense was that the homicide was justifiable upon the ground that defendant was acting in lawful defense of herself. (Penal Law, § 1055.) In such event the burden of going forward with evidence to show justifiableness shifts to the defendant but " the over-all burden of establishing the guilt of the defendant beyond a reasonable doubt never shifts from the People who must bring the case within one of the statutory definitions of one of the divisions of punishable homicide." (*People* v. *Sandgren*, 302 N. Y. 331, 334.)

The proof disclosed that on the evening in question defendant went to the home of a Mrs. Jordan, a coemployee, to play cards. Decedent was related to Mrs. Jordan by marriage and lived in a separate flat in the same house. Later in the evening he and several others joined the party. There was testimony that some four or five bottles of liquor were consumed and all of those present appear to have been more or less under the influence of intoxicants.

Eventually a dispute arose between decedent and appellant. The latter testified that decedent struck her in the mouth with his fist, pulled her sweater over her head, choked her and threatened to kill her. There is also proof that following her arrest appellant's lip was bruised, cut and bleeding. The People called four witnesses who were present at the time of the brawl, but their testimony is far from satisfactory. Each was a friend of the deceased. Inexplicably each was in another place when any event occurred that was crucial to the defense. None saw the deceased hit or choke defendant. None heard him threaten

defendant. Only one of the four saw the actual stabbing. Another saw a scuffle but then left the room and saw nothing more. Another heard words exchanged and then retired to an upstairs room. One witness, who heard no argument or saw no scuffle, admitted that at a preliminary examination he had testified that decedent was choking defendant and she could not move. One cannot read the record dispassionately without reaching the conclusion that either the haze of alcohol or the desire to be helpful to the memory of their departed friend, or other influences, severely handicapped the testimonial capacity of these witnesses. In our opinion the finding implicit in the verdict of the jury that it had been established that the homicide was not justifiable is against the weight of the evidence.

If doubt remained it is dissolved by the unfortunate incident that occurred when the jury requested the reading of certain testimony. All that took place may have been unavoidable, but in a case such as this where the proof presented a close issue of fact we are unable to find that it had no adverse effect on the fundamental rights of the defendant.

It is not clear from the record when the jury returned and requested the reading of testimony. It does appear that several hours elapsed before the Trial Judge abandoned hope of locating the stenographer and brought in two Supreme Court stenographers, one of whom endeavored to read the notes of the departed stenographer. A cursory reading of what took place discloses that at least 11 times the stenographer announced "I can't make this out", or "I don't get the part that follows this." Moreover, appellant complains that the cold record does not disclose the spasmodic and halting manner with frequent pauses in which the imported stenographer read the notes.

We have recently passed upon a similar situation (*People* v. *Lorenz*, 16 A D 2d 135). There we reversed when the stenographer disappeared and the jury never received a reading of requested testimony. One completes a reading of this record with the definite conclusion that appellant was deprived of the fundamentals of a fair trial.

The judgment should be reversed and a new trial granted.

WILLIAMS, P. J., and HALPERN, J. (dissenting). We find the evidence sufficient to sustain the conviction. After the beginning of the altercation described in the prevailing opinion, the defendant went into the kitchen, an adjoining room, and procured a kitchen knife and returned and stabbed and killed the decedent. When she left the kitchen she was only a few steps from a side door through which she could have left the house.

However, she chose to return and to attack the decedent with a dangerous weapon. Before that time some of the members of the party had endeavored to induce the defendant to leave by the front door, but she had resisted and refused to do so. There was ample evidence upon which the jury was justified in finding that the defendant was the aggressor throughout.

We cannot agree with the view expressed in the prevailing opinion that the finding implicit in the jury's verdict that the homicide had not been committed in self-defense was against the weight of the evidence. Section 42 of the Penal Law provides that " An act, otherwise criminal, is justifiable when it is done to protect the person committing it   *   *   *   from inevitable and irreparable personal injury, and the injury could only be prevented by the act, nothing more being done than is necessary to prevent the injury ". A finding of self-defense would clearly have been contrary to the evidence under this rule. Even if the decedent had been the aggressor in the initial altercation, the defendant was under a duty of retreating before using force likely to cause death or serious bodily injury. (*People* v. *Kennedy,* 159 N. Y. 346.)

It appears that the stenographer was not available at the time the jury requested the reading of certain testimony, and the testimony was read from the notes of the stenographer by another stenographer. Subsequently, the first stenographer transcribed the testimony. A comparison of the testimony as read to the jury and the testimony as it was originally given discloses that there were very few discrepancies, all of a negligible character. The defendant suffered no prejudice because of this unfortunate incident.

We would affirm the judgment of conviction.

Bastow, Goldman and McClusky, JJ., concur in *Per Curiam* opinion; Williams, P. J., and Halpern, J., dissent and vote to affirm in an opinion.

Judgment of conviction and order reversed on the law and facts and a new trial granted.