**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Louis P. NIRO and Michael A. Niro, Defendants-Appellants.**

**No. 90, Docket 28800.**

United States Court of Appeals Second Circuit.

Argued Sept. 30, 1964.

Decided Nov. 13, 1964.

Charles F. Crimi, Asst. U. S. Atty. (John T. Curtin, U. S. Atty., Buffalo, N. Y., on the brief), for plaintiff-appellee.

Neil R. Farmelo, Buffalo, N. Y. (Miller, Farmelo & Stenger, Buffalo, N. Y., on the brief), for defendants-appellants.

Before LUMBARD, Chief Judge, and FRIENDLY and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

█ A jury found the father and son team of Louis and Michael Niro guilty of violating 18 U.S.C. § 1014, which makes it a crime to knowingly make "any false statement or report" or to wilfully overvalue "any land, property or security, for the purpose of influencing in any way the action of * * * a Federal Savings and Loan Association * * * upon any * * * loan." The Niros appealed from the judgments of conviction entered upon this jury verdict and we affirm.

The Niros built and sold homes, usually recommending that the purchaser take out a mortgage with First Federal Savings and Loan Association of Buffalo. For several years virtually all sales were made with VA mortgages, but in June or July, 1957 Michael Niro was advised that the Association would not entertain any more VA mortgage applications and that only conventional mortgages, carrying higher interest rates, would be accepted. Under the Association's policy, formulated within the framework of government regulations, higher down payments were required on conventional mortgages than on VA mortgages. Fearing that the higher down payment requirement would hurt sales, the Niros knowingly inflated the sale price stated in the contract above what the purchaser would actually pay. The Association's appraisal invariably supported the stated contract price, and the amount of mortgage usually equaled the amount of the contract price minus the amount of the required down payment. Since the actual price paid was less than the contract price, the percentage of the actual purchase price covered by the mortgage was far greater than the percentage of the contract price permitted by the Association's policy.

This is the defendants' own version of the facts and it was not surprising that the jury returned the verdict it did and that the trial judge denied the motion for acquittal. The Niros' defense was entirely predicated on the alleged fact that Albert Geise, the former President of the Association, dead at time of the trial, suggested this fraudulent scheme to Michael Niro and knew and approved of the inflated contract prices involved in each of the twelve counts. If the President of the Association had participated in the fraudulent scheme as alleged, then, so the Niros pleaded, the false statements could not have been made "for the purpose of influencing" the action of the Association, as the statute required. This is a *non sequitur* and the trial judge quite properly rejected this defense theory in refusing defendants' charge requests [1] and in framing his own charge to the jury.[2]

---

1. Representative of defendants' requests to charge is the following:
   "4. If you find that any official of the bank encouraged the inflated contract prices, or even just had knowledge of the fact that they were inflated, and still advised the defendants to submit the applications and they would be approved, then you must find the defendants not guilty for they would not have submitted the papers for the purpose of influencing the action of the Loan Association."

2. The following is the critical part of the charge:
   "You will also note that the acts charged in the indictment are alleged to have been done 'for the purpose of influencing.' However, the evidence need not show that the Federal Loan Association was actually influenced or relied upon the alleged false statements, but only that the defendants acted 'for the purpose of influencing.'

   "To act 'for the purpose of influencing' means to act knowingly and with the specific intent to mislead, deceive, or cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself. In this regard there is testimony to the effect that the First Federal Savings & Loan Association, in granting loans, followed a policy of granting loans up to 80% of the appraised value of a home or up to 80% of the value stated in the sales contract, whichever was smaller.

   "I repeat, the evidence need not show that the Association was actually influenced or relied upon the alleged false statements. The gist of the offense is knowingly making or submitting a false statement for the purpose of influencing

The very act of falsifying the contract price shows that, however "influenced" Geise may have already been, a substantial part of the hierarchy of the Association, including the Board of Directors, who made the final decision on loans, still remained to be influenced and that the false statements were made "for the purpose of influencing" the Association. The words "for the purpose of influencing" were included in the statute to define the quality of the required intent, not to immunize a party from criminal liability because an officer of the bank was involved in the fraudulent scheme. The charge appropriately defined the required intent, and the jury was more than entitled to believe that the Niros acted with this intent. Our case bears no resemblance to Smith v. United States, 230 F.2d 935 (6 Cir. 1956), involving prosecutions under 18 U.S.C. § 1010 for knowingly making false statements in applications for FHA loans, where it was held that the trial judge's instruction improperly "ignored the element of criminal motive and guilty mind." Id. at 938.

We are also of the opinion that no reversible error arose from the conduct of the trial. The trial judge did not exceed the permissible limits of participation, and, on the contrary, it appears that he took great pains to insure a fair and informative trial. Unfortunately the substitute reporter made some mistakes in reading to the jury some of the stenographic notes made by the original reporter, who was unavailable at the time the reading was requested, but none of these mistakes was so egregious nor the testimony involved so critical as to deprive defendants of the fundamentals of a fair trial or their right to trial by jury. Compare People v. Townsel, 16 A.D.2d 178, 226 N.Y.S.2d 897 (4th Dept.1962). The halting reading may have been disconcerting, and

the occasional omission of a word may have been confusing, but the judge carefully supervised the reading and the statements made by the foreman at the time suggest that the jury understood what was being read and that it was not misled. Finally, we hold that the alleged unresponsiveness of the Government's bill of particulars and the admission of some allegedly irrelevant testimony did not disadvantage or prejudice defendants so as to entitle them to a reversal and a new trial, especially since the Niros admitted all acts attributed to them by the Government and their evidence, even if believed, would not exculpate them.

Affirmed.

in any way the action of the Association upon a loan. It is, therefore, the state of mind of a person who is alleged to have knowingly submitted a false statement, that is important. The fact that others may have been involved or have known of an act is of no consequence if such an act or such acts were done for the purpose of influencing in any way the action of the Association upon a loan."