Daniel GEVINSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 21890.

United States Court of Appeals
Fifth Circuit.

April 1, 1966.

Rehearing Denied May 10, 1966.

Charles W. Tessmer, Emmett Colvin, Jr., Dallas, Tex., J. Edwin Smith, Houston, Tex., J. Alex Blakeley, Dallas, Tex., for appellant.

B. H. Timmins, Jr., Asst. U. S. Atty., Dallas, Tex., Paul C. Summitt, Atty., Dept. of Justice, Washington, D. C., Melvin M. Diggs, U. S. Atty., Fred M. Vinson, Jr., Asst. Atty. Gen., Beatrice Rosenberg, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before JONES,* Senior Judge, and GEWIN and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

Appellant was charged in a single-count indictment with having violated 18 U.S.C.A. § 1010 [1] by willfully and knowingly causing false statements to be made to the Federal Housing Administration for the purpose of influencing its action. The indictment alleged that the false statements consisted of written representations to an agent of the FHA that stated prices for the elevator, electrical, and mechanical subcontracting construction phases of a proposed housing project were the lowest subcontract prices obtainable when, in fact and as appellant knew, such prices were not the lowest prices obtainable. This appeal is from the judgment of conviction entered on a jury verdict of guilty. Appellant was sentenced to imprisonment for a period of two years and fined $5,000. We affirm.

There are sixteen assignments of error. They may be categorized as claims that the indictment was insufficient; the evidence was insufficient; there were errors and omissions in the jury charge; and the court committed error in denying certain pretrial discovery.

Appellant was the sponsor of a building project in Dallas, Texas known as Turtle Creek Towers North Apartments. He had a two year option on the land on which the apartments were to be built. He sought an FHA insurance commitment. His application for such insurance on the project was rejected by the Dallas office of FHA in June 1960. He refiled and the application was again rejected in August, 1960. Washington counsel was retained and the rejection by the Dallas office was reversed. The target date for obtaining the FHA commitment was October 1961. The option on the land was soon to expire. The FHA sent a team of specialists to Dallas in September 1961 for the purpose of completing the processing of the application. A cost estimate of the project was required preliminary to the FHA commitment.

Sixty days was normally required to make a study of the type being made but the team was working under pressure of an October deadline. Appellant was anxious to cooperate so as to expedite the commitment. One of his associates, Mr. Folse, inquired of Mr. Martin of the FHA group whether appellant's subcontract bids would help them in expediting the question of the cost of the project. Mr. Martin told him that he would take the lowest or substantially lowest bids as one source of data in connection with the cost estimate of the project. This associate, who was on appellant's payroll, then submitted various bids and estimates totaling $8,882,242.38 to Mr. Martin. Includ-

---

* Of the Court of Claims, sitting by designation.

1. "Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both."

ed were bids for the mechanical,[2] electrical and elevator phases of the project. The entire submission was represented as the lowest bids, subcontract proposals and estimates available on the date of submission, October 5, 1961. The covering letter, on the stationery of Mr. Folse, added:

> "These prices represent the lowest prices obtainable at this date in all cases and are gathered from the files delivered under separate cover."

The three bids in question were firm in nature as distinguished from mere tentative proposals or estimates.

The facts were that appellant had other bids in hand from the same mechanical, electrical and elevator subcontractors totaling some $800,000 less on the date the higher bids were submitted to FHA by Mr. Folse. Appellant's position on the trial was that Folse acted without his knowledge and without authority, and also that the lower bids in his possession related to a different scope of work. We proceed to a consideration of the errors assigned.

■■ There is no fatal defect in the indictment. Materiality, while not alleged *in haec verba,* is alleged in substance and this is sufficient. Bins v. United States, 5 Cir., 1964, 331 F.2d 390. The same is true as to the contention that the jurisdiction of FHA is not alleged. A reading of the indictment makes it plain that it meets the requirements of Rule 7(c), F.R.Crim.P. It tracks the pertinent language of the statute, and apprises appellant of what he must be prepared to meet. It includes all of the essential elements of the offense and no more is required under this statute. It is adequate for the purpose of framing a plea of former jeopardy and otherwise fully meets the standards required by the authorities. See Yeloushan v. United States, 5 Cir., 1964, 339 F.2d 533. Cf. United States v. Debrow, 1953, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92; United States v. Nasser, 7 Cir., 1962, 301 F.2d 243; Brilliant v. United States, 8 Cir., 1962, 297 F.2d 385.

The gravamen of the offense under the applicable portion of 18 U.S.C.A. § 1010 is the uttering of a false statement with the intent to influence FHA. The indictment [3] sets out the detail of the alleged false statement, that the false statement was willfully and knowingly made and passed for the purpose of influencing the action of FHA. Anything else by way of notice could be obtained by a bill of particulars and appellant took full advantage of this remedy. The criteria laid down in Russell v. United States, 1962, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240, a contempt of Congress prosecution, were in no way violated.

---

2. Referred to in the indictment and variously as plumbing, heating, air conditioning, ventilation and refrigeration.

3. "INDICTMENT
"The Grand Jury Charges:
"That on or about October 5, 1961, at Dallas, Texas, within the Dallas Division of the Northern District of Texas, DANIEL GEVINSON, hereinafter referred to as defendant, did wilfully and knowingly, for the purpose of influencing the action of the Federal Housing Administration, make, pass, utter and publish, and cause to be made, passed, uttered, and published, to the Federal Housing Administration a false statement knowing the same to be false when made, that is to say, on or about October 5, 1961, the defendant did represent and cause to be represented to an agent of the Federal Housing Administration that the lowest prices obtainable on October 5, 1961, and the lowest subcontract bids on October 5, 1961, for plumbing, heating, air conditioning, ventilation and refrigeration; electrical and hydraulic, for the proposed housing project known as Turtle Creek Towers North Apartments, were as follows:
Plumbing, heating, air, conditioning, ventilation and refrigeration $1,672,340.00
Electrical 548,000.00
Elevators, Elec. and Hydraulic 298,600.00
which amounts, as the defendant well knew, were not the lowest prices obtainable for such items on October 5, 1961, and were not the lowest subcontract bids for such items on October 5, 1961, in violation of Title 18, Sections 2 and 1010, United States Code."

## I.

■■ With regard to the sufficiency of the evidence to support the verdict, we must take the view most favorable to the government. Glasser v. United States, 1942, 315 U.S. 60, 61 S.Ct. 457, 86 L.Ed. 680; Strauss v. United States, 5 Cir., 1963, 311 F.2d 926. The evidence adduced on the trial, stated most favorably to the government, shows that appellant was the sponsor of the project. Folse, the employee in question who dealt with the FHA specialist group, worked closely with appellant. He was told by appellant to offer assistance to the group and to suggest that bids theretofore obtained by appellant would be made available to the specialist group for consideration by them in making a project cost estimate. Folse then submitted bids, handed to him by appellant, under a covering letter signed by Folse. The letter was prepared by Folse and appellant on Folse's stationery. They were submitted to Mr. Martin of the FHA group. The three bids which form the subject matter of the indictment were in each instance only one of two bids from the same bidder in the possession of appellant. Folse knew only of the bids which he submitted to FHA. He did not know that appellant had lower bids in his possession.

The elevator bid submitted to FHA was in the amount of $298,600. It was dated September 11, 1961. This was very near the figure which a cost estimator in the employ of appellant had obtained from the elevator company (Otis) in June of the same year. This earlier figure was submitted by Otis for "budget purposes only" and as a suggestion based on what Otis described as "brief specifications." On October 5, 1961 appellant had in his possession a firm bid from Otis based on the plans and specifications underlying the project in the amount of $205,168. It was in the form of a submission to Otis and appellant accepted this bid in writing in his office as president of Turtle Creek Towers Apartment North, Inc. on September 30, 1961. Otis accepted it on October 5, 1961. This bid was not disclosed to the FHA group.

Appellant obtained a bid from the mechanical subcontractor on September 20, 1961 in the amount of $1,639,340 [4] after stating to the subcontractor that he wanted a high estimate for the mechanical work on the project by the next day. The president of this subcontractor testified that it was a "guesstimate" based on past experience and a preliminary review of the mechanical drawings. It too was near the estimate of appellant's cost estimator. The mechanical subcontractor was later invited to and did submit a firm bid on the work based on the plans and specifications of the project. The "guesstimate" was not accepted but it was presented by Folse to the FHA group as a bid. The firm bid on the project by this subcontractor in the amount of $999,000 was submitted by letter dated September 26, 1961 and was accepted by appellant in his capacity as corporation president on the same day. This bid was not made known to the FHA group.

On September 25, 1961 appellant obtained two bids on the project from the same electrical subcontractor. One was in the amount of $548,000 which the contractor testified was made at the request of appellant so that he might make a proper financial arrangement. The other bid was in the amount of $415,000. The bids are verbatim except for prices. They refer to the same plans and specifications. There is some confusion in the testimony as to just what these bids were to have included but appellant was satisfied to accept the lower of the bids by a longhand letter dated November 2, 1961. This lower bid was not made available to the FHA group.

All three of these low bids were in appellant's possession when he sent Folse to the FHA group with the higher bids.

4. There was an alternate item in this bid of $33,000 which accounts for the difference in the amount of this bid and the indictment figure of $1,672,340.

Of course, Folse's testimony that appellant sent him was vigorously disputed but this was a fact issue to be resolved by the jury.

Appellant also contends that the low bids were made in contemplation of a different scope of work. The project included a two-story commercial structure adjacent to the main apartment house. This structure was to house a restaurant, supermarket, floral shop, beauty parlor, drugstore and the like. There was a special allowance provision in the plans and specifications which called for furnishings and equipment for some of these commercial endeavors and this special allowance section was deleted by the FHA in November, 1961. The deletion, according to appellant, left the structure itself in the project but limited to the frame of the building, the roof, the exterior walls, the interior fixed walls, store fronts, and doors. This deletion is said to have eliminated any roughing in by the electrical and mechanical subcontractors; and hence the low bids were applicable only to the project as revised by the deletion. The thrust of this argument is that only appellant had the prescience to know what would happen the following November. This is offered to excuse the low bids. But the deletion had not taken place when the subcontractors prepared their low bids on the plans and specifications then in effect and they testified that the roughing in was included. This made an issue of fact for the jury. Moreover, it is even disputed that the roughing in work was excluded by the November deletion. The discrepancy in the elevator bids is not explained other than by saying that the low bid was for different elevators. The commercial structure had nothing to do with the elevators.

Three additional assignments of error center on the testimony of Folse. It is contended that his testimony failed to establish criminal intent on the part of appellant, or that he caused a false statement to be made; and that his testimony established a hypothesis of inadvertence or mistake inconsistent with guilt. There is no merit whatever in these contentions.

In sum, there was undisputed proof on which an inference might be based that appellant was seeking the highest commitment possible. This, coupled with the proof of the discrepancy in the bids, the representation of the high bids only by Folse to Mr. Martin of the FHA, and that Folse was acting pursuant to instructions from appellant made out a case of knowingly and wilfully uttering and passing a false material statement with the intent to influence FHA in a transaction pending before FHA. The case was properly submitted to the jury. The evidence was sufficient to warrant the conviction. Indeed, it was more than ample.

II.

Appellant claims that there were numerous prejudicial omissions in the charge. He urges that the court failed to define the phrase "for the purpose of influencing" as it was used in the indictment; and the terms "material", "lowest bid" and "estimate." He states that the jury should have been instructed that a conviction would lie only if the purpose of the influencing was to obtain a loan or advance of credit, or to obtain an extension or renewal of a loan, or to obtain the acceptance, release or substitution of security on a loan or advance of credit. It is also urged that the court should have instructed the jury on the specific *mens rea* inherent in the phrase "for the purpose of influencing"; and the jury should have been instructed that it could convict only for material false statements. Lastly, it is said that the court erred in having failed to submit the factual issue of jurisdiction of the FHA to the jury; and in having failed to instruct on the overt acts, if any, evidencing falsity.

Most of these alleged omissions were not called to the attention of the court but we need not consider them from the standpoint of the plain error rule since they are patently without merit. We have carefully considered the charge. It

was fair and adequate both from the standpoint of the applicable law and as adjusted to the issues and evidence. The court correctly charged the essential elements of the offense as being the act of knowingly and wilfully making a false statement or causing it to be made for the purpose of in some way influencing the action of FHA, and with knowledge on the part of appellant that the statement was false. See generally Bins v. United States, supra; United States v. Pesano, 2 Cir., 1961, 293 F.2d 229; Steingold v. United States, 6 Cir., 1958, 262 F.2d 1; Henninger v. United States, 10 Cir., 1965, 350 F.2d 849. The question of materiality was one of law for the court and the court implicitly ruled on this question in denying the motions for judgment of acquittal. Sinclair v. United States, 1928, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 629; United States v. Ivey, 4 Cir., 1963, 322 F.2d 523; Weinstock v. United States, 1955, 97 U.S.App.D.C. 365, 231 F.2d 699. The required criminal intent was also made clear to the jury although not in the terms of the charge in United States v. Niro, 2 Cir., 1964, 338 F.2d 439, as appellant could have it done.

## III.

Appellant contends that the denial of his motion under Rule 16, F.R. Crim.P. for discovery and inspection, and under Rule 17(c) for a subpoena duces tecum constitutes reversible error. The subpoena duces tecum rule is not a discovery weapon as such, although it may be used in aid of discovery under Rule 16. See Gilmore v. United States, 5 Cir., 1958, 256 F.2d 565. An application for relief under these rules is a matter within the sound discretion of the court, and the controlling test is whether there was an abuse of that discretion. See Ginsberg v. United States, 5 Cir., 1958, 257 F.2d 950, 70 A.L.R.2d 548. Under the circumstances of this case, we find no such abuse considering the showing required under Rule 16 and the unreasonableness provision in Rule 17(c).

Finally, we reject the contention that the "two-witness" rule applicable in perjury prosecutions should be applied here as a requirement to prove the falsity of the statements attributed to appellant. It is well settled that this rule does not apply in prosecutions for making a false statement to a government agency under a similar statute, 18 U.S.C.A. § 1001. See United States v. Marchisio, 2 Cir., 1965, 344 F.2d 653; Neely v. United States, 9 Cir., 1962, 300 F.2d 67, 93 A.L.R.2d 718, cert. den., 369 U.S. 864, 82 S.Ct. 1030, 8 L.Ed.2d 84; Travis v. United States, 10 Cir., 1959, 269 F.2d 928, rev'd on other grounds, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); United States v. Killian, 7 Cir., 1957, 246 F.2d 77. It does not apply here either.

Affirmed.