**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert A. HOAG, Jr.,**
**Defendant-Appellant.**

No. 86–2347.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 19, 1987.

Decided July 8, 1987.

As Amended on Denial of Rehearing
and Rehearing En Banc
Aug. 14, 1987.

Dennis P. Coffey, Coffey, Coffey & Geraghty, Milwaukee, Wis., for defendant-appellant.

Jan E. Kearney, Asst. U.S. Atty., and Joseph P. Stadtmueller, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Robert A. Hoag, Jr. appeals from his conviction on three counts of knowingly making false statements for the purpose of obtaining mortgages insured by the Department of Housing and Urban Development (HUD) in violation of 18 U.S.C. § 1010. Hoag is a real estate investor whose allegedly false statements involved the amount of earnest money received from each of three buyers in connection with a HUD insured residential loan. After being found guilty by a jury, he was subsequently fined $100 for each violation.

On appeal, Hoag contends first that because "materiality" is an element of 18 U.S.C. § 1010, the trial court erred both in denying his pre-trial motion to dismiss for failure to include an allegation of materiality in the superseding indictment and in refusing to instruct the jury that the false statements he made must be as to a material fact. Second, Hoag insists that because "specific intent" is an element of section 1010, the trial court should have granted his motion to dismiss for failing to include "specific intent" in the indictment. Finally, he claims that the trial court committed error in receiving in evidence documentary exhibits without requiring that the Government establish a proper evidentiary foundation. Finding no merit in these assertions, we affirm his conviction.

## I.

Hoag, Jr. is a manager and broker for the Robert Hoag Company, a real estate company which sells residential properties requiring rehabilitation. Hoag is the son of the owner of the company, Robert W. Hoag, whom we shall refer to as "Hoag, Sr." Hoag, Sr. was also named as a co-defendant in the superseding indictment. From 1980 to 1984, ninety percent of these homes were financed with mortgages insured by HUD and the Fair Housing Administration (FHA). The FHA is a division of HUD. FHA has a loan guarantee program well known to the public whereby it

grants mortgage insurance to a lender-mortgagee who is thereby insured against loss if the mortgagor fails to pay off the loan. The mortgage insurance guarantee referred to here was obtained in a two-step procedure. Initially the mortgagor-buyer was required to apply to the FHA for an appraisal of the property; this step is called the conditional commitment process and relates to the value of the property. The second step was the mortgagee's application for approval of the mortgagor's credit—the firm commitment process. Here, the mortgagee was required to provide the necessary financial information to the lender on a "Form 2900" including a verification of employment, a credit report, and the like. FHA relies on the lender for truth and accuracy as to the information contained in the application. Upon review and subsequent approval, the FHA endorses the insurance.

To be eligible for an insured loan, the borrower must have sufficient assets to be able to make a minimum downpayment of three percent of the acquisition costs of the first $25,000 and five percent of all amounts above $25,000. The FHA also requires that a settlement statement issued at the closing include full disclosure of all earnest money deposited with the broker. The borrower must list all amounts paid by or on behalf of the borrower including any money given or loaned from persons other than the buyer. This money may not come from anyone with an interest in the sale of the property, *e.g.*, the broker. If it is discovered that a borrower knowingly made a false statement concerning the downpayment (the required minimum investment), the application for insurance must be rejected by HUD.

Evidence was introduced at trial establishing that Hoag's employees knew about the FHA minimum downpayment requirement. Salesperson Millie Thompson stated that the company occasionally would assist buyers who had less than the required downpayment by paying the remainder by company check. The company did not require repayment at closing time. The owner, Hoag, Sr., told his salespersons that this practice was legitimate.

The realty company would subsequently send letters regarding the amount of downpayment to the lenders. These letters, however, did not reflect that when necessary because of the buyer's inability to make the downpayment, the required de-posit was advanced from the company's general fund. Hoag challenges the admission on hearsay grounds of three letters to the Grootemaat Corporation, a lender, wherein the company had made a partial payment of the required downpayment. These letters comprised the exhibits used to convict Hoag of the three counts of violating section 1010. At trial, each buyer testified as to the falsity of the statements appearing in the settlement statements. Rosie Cooper indicated that the statement contained in her letter—that the company had received $700.00 in earnest money from her—was false since she had only made a $370.00 downpayment. Laverne Kubsack reviewed her challenged letter and testified that its statement that she had paid $1,700.00 in earnest money was false; she had only paid $300.00 before closing. Finally, Rita Rolaff stated that the statement in her letter that the company had received $1,000.00 in earnest money from her and her husband was not true.

II.

A. *Materiality under Section 1010*

■ Hoag asserts that both the indictment and jury instructions in this case were defective for failing to include materiality as an element of an offense under section 1010. Materiality, however, appears nowhere in the text of section 1010. *See United States v. Hermon*, 817 F.2d 1300, 1301 (7th Cir.1987) (construing section 1010). This is in contrast to the required materiality element of section 1001, which this Circuit has consistently emphasized as being a requirement for a conviction when one is found guilty of violating this section. *See, e.g., United States v. Kwiat*, 817 F.2d 440, 445 (7th Cir.1987); *United States v. Brantley*, 786 F.2d 1322, 1326 (7th Cir.1986); *United States v. Malsom*, 779 F.2d 1228, 1235 (7th Cir.1985); *United States v. Brack*, 747 F.2d 1142, 1147 (7th Cir.1984); *United States v. Dick*, 744 F.2d 546, 553 (7th Cir.1984). Hoag fails to cite any caselaw establishing that materiality is a requirement for conviction under section 1010. The most analogous case to bolster Hoag's argument is *Gevinson v. United States*, 358 F.2d 761 (5th Cir.1966), *cert. denied*, 385 U.S. 823, 87 S.Ct. 51, 17 L.Ed.2d 60 (1967), which while not holding that materiality was an element in a section 1010 case, held that an indictment under the statute would be sufficient if materiality were alleged in substance;

the particular word "material" need not be included in the indictment.

In analyzing the sufficiency of the indictment, we need to consider what is alleged in the indictment when read in its entirety. *United States v. Esposito*, 771 F.2d 283 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1187, 89 L.Ed.2d 302 (1986). In the context of a section 1001 case, we held that the test for materiality was "whether the false statement has a tendency to influence or is capable of influencing a federal agency." *Brack*, 747 F.2d at 1147; *see also Kwiat*, 817 F.2d 440, 445. The indictment in *Brack* was upheld because it adequately informed the defendant of the charges against him. In this case, the indictment alleged that Hoag as sales manager for the company caused false statements to be made to obtain HUD insured loans. The word "material" was not used in the indictment. Yet, even if materiality was an element of a section 1010 offense and not specifically recited in the indictment, the indictment was sufficient because as in *Gevinson*, materiality was alleged in substance. Clearly, in order for his clients to obtain a loan, Hoag would have to know that the Government would eventually rely on his statements, even though a false statement may be deemed material without such reliance. *Dick*, 744 F.2d at 553.

We also reject Hoag's assertion that the jury instructions needed to contain a materiality element. In those false statement statutes that require materiality as an essential element, the "question of materiality is one of law to be decided by a judge." *United States v. Brantley*, 786 F.2d at 1327. Because materiality is not a requirement for a conviction under section 1010, an instruction on materiality need not be submitted to the jury.

### B. *Specific Intent under Section 1010*

Hoag next in a rather superficial manner contends that because the indictment against him failed to allege that he acted with "specific intent," the indictment should have been dismissed. Arguing that because every essential element of a crime must be alleged in an indictment, *United States v. Gironda*, 758 F.2d 1201, 1209 (7th Cir.1985), and that specific intent is an element of section 1010, *Gevinson v. United States*, 358 F.2d at 765, Hoag claims that the Government's failure to include the magic words "specific intent" in its indictment is sufficient ground for dismissal of the indictment. We do not agree with

Hoag's contention, and the case law he cites fails to support his claim.

We read section 1010 as requiring that the prosecution establish that a defendant intended that HUD rely on his false representations. To comport with the statute, the indictment need only allege that Hoag knowingly made a false statement for the purpose of obtaining a loan to influence HUD. The government was required and did establish that Hoag also intended that the loan be offered to and accepted for insurance by HUD. A reading of the superseding indictment reveals that the mental state required by section 1010 was sufficiently alleged. The indictment clearly stated that Hoag, Jr. "caused the making, passing, uttering, and publication of a statement, knowing that statement to be false, for the purpose of obtaining a loan from the lending institutions and with the intent that such loan be offered to and accepted by HUD for insurance and for the purpose of influencing the actions of HUD." We do not accept Hoag's assertion that "specific intent" is an element of section 1010.

### C. *Admission of Letters*

■ Hoag's final claim is that the letters admitted at trial as exhibits were not properly admitted as business records. Fed.R. Evid. 803(6). Each of the letters were transcribed on paper bearing the company letterhead, each one had the signature of Robert Hoag, Jr. inscribed thereon, and each contained the false statements made to the lending companies regarding the amounts of money held by the Hoag company for the purchase of each property. Over objection by Hoag, the district court admitted the letters, finding that "if it's in FHA files, it's in the business records of the FHA." Although we agree with Hoag's contention that the letters were not business records, because the letters were not hearsay, we affirm the trial court's ruling for admission of the evidence, *United States v. Moore*, 748 F.2d 246, 248 (5th Cir.1984), without discussing whether the foundations for admission under the business records exception were all met. *See, e.g., United States v. Keplinger*, 776 F.2d 678, 692 (7th Cir.1985).

"We exclude as hearsay out-of-court statements offered to prove the truth of the matter asserted." *United States v. Verrusio*, 803 F.2d 885, 893 (7th Cir.1986); *United States v. Norwood*, 798 F.2d 1094, 1097–98 n. 4 (7th Cir.1986). In this case,

the letters were not offered for proof of their contents, but rather were introduced for the limited purpose of establishing the *falsity* of the matter asserted: that the buyers each did not pay the amount reflected on the individual statements regarding the adequate earnest money deposited with the company. Statements introduced solely for the purpose of proving that they were made as a predicate for other proof they were false are not hearsay. *Anderson v. United States*, 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974). These letters were not hearsay.

Yet, our inquiry must continue, for the letters had to be properly authenticated for admission at trial. Fed.Rule Evid. 901. The evidence introduced at trial fulfilled the requirements of Rule 901(b)(4), Fed.Rule Evid., which mandates that we consider the surrounding circumstances and distinctive characteristics of the exhibits introduced.[1] All of the letters were written on the Hoag company letterhead, and each pertained to one of the specific real estate transactions in question and occurred on or about the date referred to in the letter. Furthermore, there was testimony that it was the company's policy to transmit these letters to the lending institutions for inclusion in the package of documents the lenders were required to submit to HUD. Robert Hoag, Jr., was the sales agent involved in selling each of the properties referred to in the three letters. An employee of Hoag Incorporated testified that the verification letters were routinely approved by either Robert W. Hoag or Robert A. Hoag (Jr.). An employee of HUD testified as to the procedure and manner in which these letters were handled by HUD. Finally, the initials of Rhonda Orth, the company's executive secretary, appeared on each letter taken from the correspondening HUD file. Accordingly, we hold that the distinctive characteristics of the letters, the facts and surrounding circumstances of the transactions referred to in the letters, and the testimony of the buyers establishing the falsity of the letters' contents and Hoag company employees concerning the transactions and office procedures, which was subject to cross-examination by the defendants, constitute "evidence sufficient to support a finding that the matter in question is what its proponent claims," Fed.Rule Evid. 901(a), and thus the letters were properly authenticated. *United States v. Bagaric*, 706 F.2d 42, 67 (7th Cir.1983), *cert. denied*, 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1984).

### III.

Hoag has failed to persuade us that the district court's error in admitting the letters as business records merits reversal. He also fails to convince us that either materiality or specific intent are elements of section 1010. The decision of the district court is, therefore,

AFFIRMED.

---

1. Rule 901 provides:
    (b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:*

     * * *

(4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.