**UNITED STATES of America,**
**Appellee,**

v.

**William Marvin ACREE, Appellant.**

**No. 72–1009.**

United States Court of Appeals,
Tenth Circuit.

Aug. 22, 1972.

Rehearing Denied Oct. 5, 1972.

Robert W. Pittman, Oklahoma City, Okl. (Robert E. Shelton, Oklahoma City, Okl., with him on the brief), for appellant.

Jeff R. Laird, Asst. U. S. Atty. (William R. Burkett, U. S. Atty., with him on the brief), for appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

SETH, Circuit Judge.

The defendant was indicted on seven counts for violation of 18 U.S.C. § 656 for wilfully misapplying funds and credits of the First National Bank of Marlow, Oklahoma, while an officer thereof. Defendant was convicted by a jury, and he has taken this appeal.

The issues on appeal concern whether an intent to defraud was shown; whether a loss to the bank was established, also the introduction of certain testimony, and the refusal of requested instructions.

The charges are directed, for the most part, to loans which had been made by the bank, and which were assumed and paid off by the defendant individually while he was an officer of the bank. The Government charged that the misapplication of funds or credits came about by reason of the forgiving of interest on these loans by the bank, or by the application against the loan balance to be paid off by defendant of interest credited on the bank books to current income. One count was based on the deduction by defendant of an amount he claimed was owed him personally from the proceeds of a Certificate of Deposit of the bank sent in to it for collection.

The counts in the indictment briefly summarized were:

Count 1. This bank loan to Jerry D. Williams was shown paid in full by the defendant without the interest which had accrued being paid.

Count 2. Another bank loan to Jerry D. Williams secured by a mortgage on oil leases was paid by defendant without the payment of interest earned from date of note. The defendant caused the bank records to show the loan to be paid in full.

Count 3. A Certificate of Deposit of Jack E. Harris was sent in for collection to the bank. The defendant deducted from the proceeds the amount of $2,025.00 which he claimed was due to him from Harris arising from the purchase and sale of a house. Harris had bought the house, had worked at the bank, and defendant had agreed to buy the house from him if Harris left the bank, for the price Harris had paid for it. The disagreement arose over what had been the price Harris paid for the house.

Count 4. An amortized loan to J. E. Epperson secured by an oil lease was paid by defendant after some fifteen payments had been made by the borrower which included both principal and interest. The amount of $1,456.-46 was deducted from current income and applied on the loan at payment.

Count 5. A loan to Jesse Moore was paid down by defendant and there was applied to the loan balance interest on the loan which had been credited on the bank books to current income.

Counts 6 and 7 refer to loans of Jesse Moore which were paid off. Some $4,000.00 was deducted from the bank's current income account and applied on the balance due when the notes were paid off. The $4,000.00 represented interest paid or accrued on the notes.

The defendant testified that the reason the loans were purchased by him was that they had become substandard loans for the bank with the possibility that the bank examiners would require that they be charged off and he thus took the loans out of the bank. The testimony was also to the effect that the bank did not have a reserve for such charge-offs large enough to permit the loans to be so handled. The defendant thus urged that the purchases were made for the ultimate good of the bank to prevent it from having the losses reflected in its reports and statements. The participation by the defendant, officially as a bank officer and personally, in the particular transactions is not questioned. The defendant, of course, does not agree with the implications placed on his acts by the Government. The evidence also shows that the collateral behind the loans paid off by defendant was acquired by him when he took the loans out of the bank. It also shows that the defendant had or was having personal business dealings at the time with some of the borrowers concerned.

The defendant also urged by way of defense that the Board of Directors of the Marlow bank approved his purchases of the loans. The minutes recite on one occasion that the defendant had purchased several loans, without naming them, and the board was pleased with this. No details appear in the minutes and there is no blanket approval of such purchases, if this would be of any significance. There is also no specific approval of the purchases in question by the regulatory authorities if such would be of significance.

The defendant at all material times owned the controlling stock interest, or the entire interest in the bank and was its chief executive officer. The extent of defendant's ownership of stock in the bank at any given time was not material to the issues tried.

The defendant, at the close of all the evidence, moved for a judgment of ac-

quittal on all counts. The motion was directed particularly to the matter of intent to defraud the bank. The trial court denied the motion and the defendant here asserts this was error.

The statute under which defendant was charged, 18 U.S.C. § 656, uses the term whoever "willfully misapplies" any monies etc. The specific requirement of "intent" had been included in the pertinent section as it existed before its revision [18 U.S.C. § 592], but not in the present section 656. See Laws v. United States, 66 F.2d 870 (10th Cir.). The authorities considering the current section nevertheless require a showing of intent as before the revision. United States v. Fortunato, 402 F.2d 79 (2d Cir.); Golden v. United States, 318 F.2d 357 (1st Cir.); Ramirez v. United States, 318 F.2d 155 (9th Cir.).

■ The intent of the defendant in a case such as this may be inferred from the facts and circumstances developed during the trial. Giragosian v. United States, 349 F.2d 166 (1st Cir.); Cummings v. United States, 289 F.2d 904 (10th Cir.); Estep v. United States, 140 F.2d 40 (10th Cir.). We have also held that intent is basically a fact question for the jury. United States v. Ebey, 424 F.2d 376 (10th Cir.), citing Van Nattan v. United States, 357 F.2d 161 (10th Cir.).

On the record before us, which is for the most part direct evidence, there is no question that the defendant initiated the transactions, and performed the physical acts upon which the charges are based. Defendant was experienced in the banking business, having spent some forty years working in various capacities in banks. The manner in which he handled the liability of the borrower for interest, the accrued interest, and interest entered in the earned income account of the bank provided a clear basis for the conclusion that the ordinary consequences of such acts had to deprive the bank of funds to which it was entitled,

or credits it already had. The same must be said about Count 3 concerning the funds from the Certificate of Deposit.

■■ The trial court upon a motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure must evaluate the evidence and enter such judgment when the evidence is insufficient to sustain a conviction. In so doing the evidence must be considered in the light most favorable to the Government and benefit given to it of all inferences which can reasonably be drawn from the evidence. In United States v. Harris, 441 F.2d 1333 (10th Cir.), we said:

"In deciding a motion for acquittal the trial judge determines whether, considering the evidence in the light most favorable to the government, there is substantial evidence from which a jury might reasonably find that an accused is guilty beyond a reasonable doubt."

Goff v. United States, 446 F.2d 623 (10th Cir.); Lewis v. United States, 420 F.2d 1089 (10th Cir.); see also Speers v. United States, 387 F.2d 698 (10th Cir.); Wall v. United States, 384 F.2d 758 (10th Cir.). In Goff v. United States, 446 F.2d 623, the test on appellate review was referred to in the same terms. See also 8 Moore's Federal Practive (Cipes), Rules of Criminal Procedure ¶ 29.06. In our application of these standards, including those considered in Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, we find there clearly was sufficient evidence to warrant a denial of defendant's motion for acquittal on each of the counts, both generally and upon the specific matter of intent to defraud.

The defendant also urges that the trial court was in error in not dismissing each count for the reason that no loss to the bank was alleged, and further was in error in not granting a judgment of acquittal on each count for the reason that there was not proof in each in-

stance of such a loss, and in instructing that it was not necessary to show a loss.

■ The provisions of 18 U.S.C. § 656 make no mention of loss to the bank or causing loss, although it expressly covers embezzlement and purloining. Several courts have considered the issue whether a loss must be alleged or shown and have decided it need not be. These cases include United States v. Fortunato, 402 F.2d 79 (2d Cir.); Golden v. United States, 318 F.2d 357 (1st Cir.), and Benchwick v. United States, 297 F.2d 330 (9th Cir.). In the Fortunato case the court said specifically that it was not necessary to prove that the bank suffered any loss, and cited Golden v. United States from the same circuit. The proof at defendant's trial was directed to the handling of interest on the loans paid by the defendant, and it demonstrated that the interest, or funds, or credit was misapplied. The trial court properly denied defendant's motions directed to the loss issue and properly instructed the jury. We do not consider United States v. Wiggenhorn, 312 F.2d 289 (9th Cir.), to be contrary.

■■ On the matter of loss to the bank, much of the defense was directed to the proposition that the bank could have been benefitted in the long run by the purchase by defendant of the loans concerned because they had become substandard and the bank's reserve for loan losses was not large enough to permit them to be charged off. The ultimate or future possibility or probability of benefit to the bank is not a defense to a misapplication of funds at the time of purchase of the loans. The offense occurred and was complete when the misapplication took place. What might have later happened as to repayment is not material and could not be a defense. The immediate intent to misapply and to defraud was established by the evidence. See Mulloney v. United States, 79 F.2d 566 (1st Cir.), quoting from Galbreath v. United States, 257 F. 648 (6th Cir.), as to the "defense" of ultimate benefit.

■ The defendant also argues that certain of the minutes of the directors' meetings of the bank's board refer generally to the purchase of poor loans by the defendant. Some of these are after the event, and such a ratification, if it be one, is no defense. To the extent the minutes refer to future purchases, they are again in general terms and relate to no specific loans. They also do not contain enough details as to future acts, nor indicate the board's knowledge as to the facts, to serve as a basis for defendant's argument. We find no error in the refusal of the trial court to admit these into evidence. Further, we express no opinion as to the legal consequences of such consent or ratification had it been demonstrated to be such. See Gilbert v. United States, 359 F.2d 285 (9th Cir.).

This court has considered the nature of the offense here charged in the two recent cases of United States v. Cooper, 464 F.2d 648 (10th Cir.), and in United States v. Archambault, 441 F.2d 281 (10th Cir.). Also for facts constituting misapplication of funds, see Swingle v. United States, 389 F.2d 220 (10th Cir.).

The defendant next urges that the instructions he offered were improperly refused. He refers particularly to instructions Nos. 5, 6, 7, 8, 11, 12, 13, 14, 15, 16 and 18, which related to the defenses raised. We have examined these requested instructions in the light of the evidence introduced, and under the prevailing law relating to the offenses charged. Several of the requested instructions refer to the points already covered above, and the trial court properly refused them. As to the others we find no error in the rulings by the court. The defendant had a fair opportunity to present his theory and to develop his case within the confines of the established law on the several points concerned.

As to the introduction and refusal of certain items of proof, the defendant urges that the trial court should have permitted him to offer further proof as

to the details of the house purchase concerned in Count 3. This count referred to the Certificate of Deposit in the name of Harris as described above. We do not see how further details as to the transaction which gave rise to the funds which Harris put in the Certificate of Deposit would have been helpful to the jury, nor proper. If the proof was to show that Harris may have wrongfully represented the price he paid for the house, this would have been no defense to the manner in which the defendant handled the Certificate of Deposit or the proceeds therefrom. In any event, the way in which the proof was offered, it would have been hearsay, and not impeachment of Harris.

■■ In any event, the introduction or refusal of evidence is a matter for the exercise of discretion by the trial court. The action of the court on such a matter will not be disturbed except for an abuse of discretion. We have so held in United States v. Miller, 460 F.2d 582 (10th Cir.), and in United States v. Wainwright, 413 F.2d 796 (10th Cir.). The same standard applies as to rulings on the limit of cross-examination. United States v. Jorgenson, 451 F.2d 516 (10th Cir.), and United States v. Miller, supra. The record does not show any violation of the rule relating to evidence of unrelated wrongdoing as defendant urges. Not wrongdoing in the criminal sense, but defendant complains of evidence or comments of counsel about the way the bank was run. The evidence introduced relating to the business association of some of the concerned borrowers with the defendant was directed to the manner of intent, and an explanation of the origin or background of the loan and its collateral. We find no error on this point.

The defendant's point relative to the introduction or refusal of evidence as to the value of collateral by either side must be met with the same answer.

We find no errors in the instructions and rulings of the trial court.

Affirmed.