**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles BRAVERMAN, Defendant-Appellant.**

**No. 74–1467.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1974.

Decided June 16, 1975.

Rehearing and Rehearing En Banc Denied July 16, 1975.

Certiorari Denied Nov. 17, 1975. See 96 S.Ct. 392.

---

Thomas P. Sullivan, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Jeremy D. Margolis, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and PELL, Circuit Judges, and CAMPBELL, Senior District Judge.*

PELL, Circuit Judge.

The defendant-appellant Charles Braverman was charged in a six-count indictment with conspiracy and five substantive counts arising from the procurement of two fraudulent loans. After a jury found Braverman guilty on all six counts, the district court judge, who had reserved ruling on Braverman's motion for judgment of acquittal, found that the Government had failed to prove four accessory counts (Counts 2 through 5) and granted Braverman's motion on these counts. Braverman now appeals from his conviction on the remaining Counts 1 and 6, which charged, respectively, conspiracy and making false statements to a bank in order to obtain two loans, in violation of 18 U.S.C. § 1014. The major issues raised on appeal are: (1) whether the evidence was sufficient to prove Braverman intended to defraud the bank; (2) whether the evidence was sufficient to prove Braverman's involvement in the conspiracy; (3) whether the district court erred in deferring its ruling on Braverman's motion for judgment of acquittal; (4) whether the evidence was sufficient to show the materiality of the financial statement; and (5) whether the district judge erred in replaying the tape of the jury instructions and permitting the jury to take notes during this time.

1. Braverman contends, with respect to both Counts 1 and 6, that the evidence was insufficient to prove that he intended to defraud the Steel City National Bank.

The intent of the defendant, in a case such as this, may, of course, be inferred from the facts and circumstances in proof. *United States v. Acree,* 466 F.2d 1114, 1117 (10th Cir. 1972), *cert. denied,* 410 U.S. 913, 93 S.Ct. 962, 35 L.Ed.2d 278 (1973). Viewing the evidence here, as we must, in the light most favorable to the Government, we find that the evidence was more than sufficient to support the jury's verdict.

Braverman, a broker on the Chicago Mercantile Exchange, agreed to use a fictitious name, "Peter Weis," to secure a $30,000 bank loan for his insolvent friend Robert Ness. After being assured by Ness that Ness could "handle" such a loan at the bank, Braverman signed a blank bank note with the fictitious

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

name, see *United States v. Iannelli,* 461 F.2d 483 (2d Cir. 1972), *cert. denied,* 409 U.S. 980, 93 S.Ct. 310, 34 L.Ed.2d 243 and arranged for a mailing address where bank notices could be mailed.

The conditions under which the loan was granted, moreover, were highly unusual. A few days after Braverman had signed the blank note but before any financial statement was filed with the bank, Ness told Braverman that he could expect loan approval in a day. Later when Braverman and Ness did "get together" to prepare a financial statement, Braverman simply signed the blank statement with the fictitious name and left it to the insolvent Ness to fill in the financial data.[1] At no time did Braverman provide Ness with any information concerning his actual financial situation.

Later, when the note became due, it was renewed by using renewal notes signed by Braverman in the fictitious name.

Furthermore, when difficulties arose with regard to the false address given for Peter Weis, Braverman arranged for a second false address, that of his nephew.[2] When questioned by his nephew about the bank correspondence, Braverman simply told him to "throw it out."

The evidence also indicated that although Braverman originally refused to secure a second "Peter Weis" loan for Ness, funds from that $20,000 loan, once secured by Ness, were used to place a particular commodities account in a credit position. Braverman's handling of this account had generated over $3,500 in commissions for him until a deficit position forced a halt to the trading. Once restored to a credit position, the account generated a further $5,500 in commissions for Braverman. Moreover, the evidence indicated that at some point Braverman signed the fictitious name to a second blank financial statement which Ness completed and submitted to the bank.

■ The fact that Braverman was willing to repay the loans and did in fact do so does not negate his intent to defraud. *United States v. Acree, supra* at 1118; *United States v. Fortunato,* 402 F.2d 79, 80–81 (2d Cir. 1968), *cert. denied,* 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969).

The question of Braverman's intent was a matter for the jury to decide. The jury was aware of Braverman's illness during the pertinent period as well as the defendant's contention that he had merely been duped by Ness. However, given the facts outlined above, we cannot say that the evidence was insufficient to support the jury's verdict.

2. Count 1 charged a conspiracy involving Braverman, Ness, and two officers of the Steel City National Bank, Stanley Johnson and Charles Helms. The conspiracy, as charged, had three objectives: (1) the willful misapplication of bank funds, (2) the making of false entries in bank records, and (3) the submission of false statements to the bank. The defendant argues that the evidence was insufficient to prove Braverman's involvement in the first two objectives of the conspiracy. Braverman contends that the only conspiracy with which he could have been charged is one whose sole object was to submit false statements and whose sole participants were Ness and himself.

■■ As Braverman concedes, his acquittal on the accessory counts dealing with the willful misapplication of funds and the making of false entries did not preclude a finding that Braverman was liable under a conspiracy count extending to these activities. *United States v. Greer,* 467 F.2d 1064 (7th Cir. 1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1364, 35

1. The loan was, in fact, granted after Braverman had signed the financial statement but before it was submitted to the bank.

2. On two separate occasions, note-due notices were returned to the bank, once because of "No Such Address" and once because the property had been sold. These red flags to a lending institution appear not to have rippled the waters.

L.Ed.2d 590 (1973). Moreover, the fact that the Government presented no evidence indicating that Braverman ever met Johnson or Helms is not determinative of Braverman's involvement in the conspiracy since a conspirator need not know the identity or even the number of his confederates. *Blumenthal v. United States,* 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

"The fundamental question is what the defendant assented to and whether that assent can be construed as including subsequent participants and their activities." *Greer, supra* at 1071. In *Greer,* the defendant simply informed four persons of the location in Indiana of a truckload of copper. On the basis of this information, the four stole the copper, transported it to Chicago, warehoused it, and ultimately sold a portion of it. Greer's involvement was limited to informing the others of the location of the truck and to telephoning later to ask about his share of the proceeds. This court held that although the evidence was insufficient to prove that Greer aided and abetted the transportation of the goods, the evidence was, nonetheless, sufficient to support a conspiracy count charging three objectives: stealing from an interstate shipment, transporting stolen goods in interstate commerce, and concealing stolen goods.

> "[A] conspiracy with multiple objects and multiple parties can . . . be held to constitute a single conspiracy as long as the objects are integrally related, such that 'the success of that part with which [the defendant] was immediately concerned, was dependent upon the success of the whole.' . .
> [E]ach 'link' in the scheme must have

assumed that the unlawful venture could not stop with their task alone. Thus we infer consent to the later, indispensable stages from Greer's consent to the preliminary ones." 467 F.2d at 1071.

■ Just as Greer could reasonably foresee that the stolen copper would be transported in interstate commerce and concealed, so, in the present case, Braverman could reasonably foresee the necessity of the criminal involvement of bank officials. Braverman applied for a loan in a false name and provided a false address after being assured that Ness could "handle" such a loan at the Steel City National Bank.[3] Braverman was told by Ness to expect approval of the loan even before a financial statement had been submitted. Braverman later signed a blank financial statement with the fictitious name but without supplying Ness with any information concerning his actual finances. Braverman assured his nephew he could simply throw out the bank correspondence addressed to Peter Weis. Yet equipped initially with only the blank note signed in a false name and a false address, and later supplemented with a signed blank financial statement, an insolvent Ness sought to and did secure a $30,000 loan. As in *Greer,* Braverman participated in "setting up a structure which [became] the continuing focal point for crimes" and "must have assumed that the unlawful venture could not stop with [his] task alone." *Id.*

It is no sufficient answer to the contrary to say that Braverman could properly assume that Ness would so doctor the papers supporting this loan at a national bank that the loan officers would

---

**3.** Words, of course, must be viewed in the context in which they are used. No doubt a prospective borrower whose credit was established at a bank could be deemed to be handling a loan at the bank, even though that loan was routine and legitimate, although in this circumstance it might seem more appropriate to say that the bank was handling the loan. In the present situation, in which the financial statement was signed with a fictitious name without knowledge of what was to be inserted on the form, "handle" would reasonably appear to imply something more than the ordinary legitimate bank loan transaction and rather to carry the indication that notwithstanding any lack of authenticity in the transaction the loan nevertheless could be arranged at a particular bank by virtue of intra-bank cooperation, which, under the present circumstances, would necessarily be of an illegal nature.

be fooled into thinking that these were indeed legitimate lending transactions. The handling of the transactions was so bizarre, the concealment of the truth was so evident, and the badges of fraud were so obvious that we are unable to preclude the drawing of a reasonable inference that Braverman was not ignorant of the necessity of bank inside complicity. He need not have foreseen the exact form of that complicity nor the identity of those involved.

■ Since the indictment charged and the proof showed a single continuing and continuous conspiracy, the "possibility of a variance" *United States v. Varelli,* 407 F.2d 735, 746 (7th Cir. 1969), did not exist and, therefore, a multiple conspiracy instruction was not necessary.[4] *United States v. Barrera,* 486 F.2d 333, 339 (2d Cir. 1973); *United States v. Calabro,* 449 F.2d 885, 893 (2d Cir. 1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct. 728, 30 L.Ed.2d 735 (1972).

3. Braverman next complains that the district court erred in deferring his ruling on the defense motion for acquittal until after the jury returned its verdict.

■ While the better practice would have been to have entered the judgment of acquittal at the close of the Government's case-in-chief, the error is harmless since, when the Government rested, the evidence was sufficient to sustain a conviction on Counts 1 and 6. *United States v. Guinn,* 454 F.2d 29, 33 (5th Cir. 1972), *cert. denied,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685; *United States v. Prionas,* 438 F.2d 1049, 1054 (8th Cir. 1971), *cert. denied,* 402 U.S. 977, 91 S.Ct. 1683, 29 L.Ed.2d 144. Moreover, because Count 1 charged Braverman with conspiring to commit the same acts alleged in the accessory counts, all of the evidence supportive of the accessory counts would have been admissible had Braverman been tried only on Counts 1 and 6. *United States v. Wininger,* 427 F.2d 1128, 1129 (6th Cir. 1970).

■ We find unpersuasive Braverman's contention that the jury's erroneous finding of guilt on the accessory counts "must necessarily have infected the jury's deliberations on the conspiracy count." Acquittal on an accessory count does not bar a conviction on a conspiracy count based on the same facts. See *Greer, supra.* Furthermore, the jury in the present case was twice instructed that each count should be separately considered and that "[t]he defendant's guilt or innocence of the crime charged in one count should not affect your verdict on the other count." See *United States v. Pacente,* 503 F.2d 543, 548 (7th Cir. 1974).

4. Braverman contends, with respect to Count 6, that the evidence was insufficient to show the materiality of the financial statement.

■ A statement concerns a material fact when it has the "capacity to influence" the lending institution. *United States v. Goberman,* 458 F.2d 226, 229 (3rd Cir. 1972). See also *Blake v. United States,* 323 F.2d 245 (8th Cir. 1963). Here, the false financial statement clearly had the capacity to influence the bank officials. The fact that Johnson granted the loan before the statement was submitted is irrelevant since, as the defendant concedes, materiality does not depend upon actual reliance. *Goberman, supra.* Although the loan was granted before the statement was submitted, Johnson granted the loan with the knowledge and assurance that the statement would be forthcoming. Braverman, moreover, cannot avoid criminal liability on the basis of Johnson's illegal conduct. "The words 'for the purpose of influencing' were included in the statute to define the quality of the required intent, not to immunize a party from criminal liability because an officer of the bank was involved in the fraudulent scheme." *United States v. Niro,* 338 F.2d 439, 441 (2d Cir. 1964). Finally, we note that, subsequent to the submission of the financial statement, the loan was

---

4. We read *Varelli's* "possibility" as meaning something more than a scintilla, and requiring a reasonable possibility of variance. Here the conspiracy by its nature required for its accomplishment the participation of bank officials.

repeatedly renewed, transactions which the statement clearly had the capacity to influence. It is common knowledge that not only do loan files have to meet bank imposed standards but such files are subject to periodic scrutiny by national bank examiners as to supporting documents and other pertinent data.

5. We also find unpersuasive Braverman's contention that the district judge erred in responding to a jury inquiry by having a tape of the entire set of instructions played and in allowing the jury to take notes while the tape was played.

The necessity, extent, and character of any supplemental instructions to the jury are matters within the discretion of the district court. *United States v. Jackson*, 482 F.2d 1167, 1177 (10th Cir. 1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974). Since the instructions in the present case properly stated the law of aiding and abetting, the district court did not abuse its discretion by having the instruction replayed for the jury. *United States v. Wilkerson*, 456 F.2d 57, 62 (6th Cir. 1972), *cert. denied*, 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337. The jury's inquiry, moreover, related only to the accessory counts on which the district judge later granted the defense motion for acquittal. *United States v. Harris*, 388 F.2d 373 (7th Cir. 1967), and *Powell v. United States*, 347 F.2d 156 (9th Cir. 1965), do not support Braverman's contention. In *Harris*, the district judge, in rereading the instructions, omitted all definitions of essential terms and made no reference to the presumption of innocence and standard of proof required for conviction. In *Powell*, the trial court reread only part of the instructions which might have led to an improper standard of review.

The decision to allow a jury to take notes as well as the procedure used for such note-taking are also matters within the sound discretion of the district court. *United States v. Marquez*, 449 F.2d 89, 93 (2d Cir. 1971), *cert. de-*

*nied*, 405 U.S. 963, 92 S.Ct. 1173, 31 L.Ed.2d 239 (1972); *United States v. Pollack*, 433 F.2d 967 (5th Cir. 1970). We find no abuse of discretion here. Since the jury here requested that they be permitted to make notes during the playing of the tape, the defendant's reliance on *United States v. Standard Oil Co.*, 316 F.2d 884 (7th Cir. 1963), is inapposite.

We have considered the other issues raised by the appellant but find them to be without merit.

Affirmed.