UNITED STATES of America, Plaintiff-Appellee,

v.

E. M. "Mike" RIEBOLD and Donald T. Morgan, Defendant-Appellants.

Nos. 76–1170, 76–1171.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 15, 1977.

Decided May 25, 1977.

Petition for Rehearing Denied June 14, 1977.

---

Lyman G. Sandy, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief), for plaintiff-appellee.

James Patrick Quinn and Philip F. Cardarella, Kansas City, Mo., for defendant-appellant Riebold.

Peter Everett, IV, of Parker, Francis & Everett, Albuquerque, N. M., for defendant-appellant Morgan.

Before SETH, BARRETT, Circuit Judges, and KERR, District Judge.*

BARRETT, Circuit Judge.

E. M. "Mike" Riebold (Riebold) and Donald T. Morgan (Morgan)[1] have been found guilty by a jury of receipt of a fee for

---

* Of the District of Wyoming, sitting by designation.

1. Hereinafter collectively referred to as appellants.

procuring a loan, aiding and abetting, misapplication of bank funds, false statement in a securities registration statement, wire fraud, interstate transportation of property obtained by fraud, securities, fraud, conspiracy, and mail fraud.[2] On the verdicts, the trial judge entered judgments convicting appellants and sentencing them, from which they appeal.

Appellants were initially charged on December 20, 1974, by an 84 count indictment. This indictment was superseded by a subsequent 84 count indictment filed on April 29, 1975. After three co-defendants entered guilty pleas, appellants proceeded to trial on the 75 counts of the indictment bearing charges relating to them. Riebold was convicted on 72 counts. Morgan was convicted on 71 counts.

Riebold was engaged in the business of mineral development involving oil, gas, and coal. He was the controlling stockholder of several corporations, including American Fuels, Inc., Garfield Mines, Inc., Auqua Pura, and United States Lime. Through numerous bank loans and loans from private investors, as will be developed, *infra,* Riebold was able to project an image of immense wealth.

Morgan was a vice-president and a chief loan officer of the First National Bank of Albuquerque, New Mexico (First National). Morgan initially approved loans to Riebold because he "had thought for some time that our bank, as the second largest bank in the state, ought to achieve a certain expertise in oil and gas lending that didn't exist in New Mexico banks at that time." Thereafter, he continued to approve loans to Riebold because he felt "trapped" and because he believed that additional loans were necessary if First National was to recover any of the money it had advanced.

The trial consumed more than thirty days. The Government introduced an overwhelming amount of evidence which established the manner in which appellants defrauded First National and a number of private investors. Loans were generally acquired for Riebold and his companies by misrepresentations made by appellants relating to the value of Riebold's assets and the manner in which the monies were to be expended.

The Government proved that Riebold's companies were, for all practical purposes, dormant; that the companies generated little or no income, had negative net worths, and were unable to pay their obligations on a timely basis; that loans advanced by Morgan and private investors allowed the companies to exist; that loans advanced for specific exploration activities were diverted to pay salaries, telephone bills, costs incurred in operating Riebold's airplane, entertainment expenses, work on Riebold's home, and in payment of existing loans and overdrawn bank accounts.

The Government established that Morgan utilized his position as senior vice-president of First National to: loan Riebold approximately three million dollars ($3,000,000.00) at a time when Morgan's authorized lending limit was $150,000; make loans to Riebold that other bank officers would not have made; loan Riebold monies after being warned not to do so because of Riebold's poor payment history; loan Riebold monies without first obtaining a credit check or securing adequate and proper collateral; conceal loans made to Riebold which he knew would not be approved; assure other officers that the Riebold loans would all be repaid shortly; repay some $2.8 million of Riebold's loans by fraudulently completing a signed blank check of a corporate depositor; continue to make loans to Riebold after being expressly admonished by his superiors not to make any further loans to him. Morgan made these loans in a relatively unnoticed manner because of the high position of influence and authority he held and further because he was much respected within First National. His co-employees and associates were disinclined to challenge his loans. Riebold rewarded Morgan for his

---

2. In violation of 18 U.S.C.A. § 215, 18 U.S.C.A. § 656, 15 U.S.C.A. § 77k, 18 U.S.C.A. § 1343, 15 U.S.C.A. § 77q(a), 18 U.S.C.A. § 2314, 18 U.S. C.A. § 371, 18 U.S.C.A. § 1341, and 18 U.S.C.A. § 2.

help by bestowing financial favors upon him.

The Government introduced detailed evidence establishing the manner by which appellants were able to defraud a number of private investors out of an amount in excess of $2,000,000.00. This is well summarized in the Government's brief: "Riebold's usual method of doing business with these investors and others was to impress them with his apparent wealth, including his lavish mansion and jet planes, which he used to fly investors to various properties. He boasted of his many companies and properties which he falsely represented to be worth many millions of dollars, and told tales of huge deals that were always just about to be closed."

Riebold and Morgan testified and they presented evidence supportive of their defense which "was a general denial of any intent by Riebold or Morgan to pay or receive any 'kickbacks', or misapply bank funds, or defraud anyone." Whether appellants intended to defraud or injure First National is, of course, immaterial in an 18 U.S.C.A. § 656 prosecution. In *United States v. Tokoph,* 514 F.2d 597 (10th Cir. 1975), we said:

> . . . This evidence is said to indicate Weil and appellant did not intend to injure or defraud the Bank. Whether or not the loans were repaid or the Bank actually suffered a loss is not material to a § 656 charge. "The offense occurred and was complete when the misapplication took place." *United States v. Acree, supra* [466 F.2d 1114 (10 Cir.)].

514 F.2d, at 604.

On appeal appellants do not directly challenge the sufficiency of the evidence. They contend that the trial court erred in: (1) refusing to grant a continuance; (2) denying their motion for a mistrial during the testimony of the Government's chief witness; (3) allowing the jurors to take notes; (4) permitting their trial on a patently biased indictment; and (5) inadequately instructing the jury.

## I.

### (a)

Morgan contends that the trial court erred in refusing to grant a continuance in that his motion was not dilatory but was necessary to prepare for "such a complex and lengthy trial" and that with additional time he could have produced evidence which would have materially benefited his defense.

Morgan was originally indicted on December 20, 1974. He had the services of retained counsel at that time and for some time prior thereto in the course of First National's investigation. Morgan then retained other counsel who represented him throughout the period that the second indictment was brought (April 29, 1975), during the many hearings on motions that arose thereafter and until August 8, 1975, when his counsel assumed a state district judgeship. This, of course, precluded him from further representation of Morgan.

His counsel had informed Morgan about July 8, 1975, almost one month prior to his assumption of the judgeship, that he had been so appointed and would be unable to further represent him. Even so, it was four weeks later when Morgan retained new counsel, who entered his appearance in this case on August 13, 1975. At that time, trial had been scheduled for September 8, 1975. The trial court had granted two continuances at that time.

Following his entry of appearance as Morgan's newly retained counsel, he filed for yet another continuance. He contended, *inter alia:*

> 5. The undersigned is informed and believes that the trial in this cause will last from two to three months and as a result of the complexities of the case, the number of witnesses and exhibits to be offered by the Government and the Defendant, the undersigned respectfully moves the Court for a continuance in order to properly acquaint himself with the case and prepare a defense for the defendant . . .

[R., Vol. I, p. 167.]

■ Morgan argues that the denial of the continuance placed an insurmountable burden upon his newly retained counsel in that it was impossible for him to prepare for the trial to commence September 8, 1975. On this predicate, Morgan alleges that he was effectively denied assistance of counsel and due process of law. We hold that the trial court acted well within its discretion in denying the continuance.

■ A trial court's determination to deny a motion for a continuance will not be set aside absent proof of a manifest injustice resulting from its denial. In *United States v. Hill*, 526 F.2d 1019 (10th Cir. 1975), *cert. denied*, 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976), we said:

> Consideration of these contentions is based on the well-established rule that "[t]he trial court is vested with discretion as to granting a continuance. Its exercise will not be disturbed on appeal in the absence of a clear showing of abuse resulting in manifest injustice." *United States v. Spoonhunter*, 476 F.2d 1050 (10th Cir. 1973). Our review of the record convinces us no abuse of discretion occurred in denying this motion for continuance. One attorney had entered his appearance on November 27, 1973, two other attorneys had entered their appearances on January 24, 1974. Services of a court-appointed investigator were utilized. No showing of inadequate time to investigate and prepare for trial is made. *See United States v. Harris*, 441 F.2d 1333 (10th Cir. 1971). The record does not show any injustice resulting from the denial of this continuance request.

526 F.2d, at 1021–1022.

We hold that the record evidences that Morgan suffered no manifest injustice by reason of the denial of his motion for a continuance. Although the trial was lengthy, the case was not complex.

■ The evidence introduced by the Government centered upon Morgan's scheme and intent to defraud First National and a number of private investors. Morgan was ably represented by his experienced retained counsel who had spent considerable time preparing for the trial, aided by the services of a full-time investigator. Morgan's contention that a continuance may have allowed him to present mitigating evidence is too general to pass judicial muster, particularly in view of the adequate, able defense conducted by his retained counsel. The denial of the motion for continuance did not deny Morgan due process of law.

Morgan's related allegation that the denial of his motion for continuance in turn denied him effective assistance of counsel is equally without merit. We cannot lend even token credibility to Morgan's allegation that during the period December, 1974, to August, 1975, his retained counsel did ". . . little or no action [was taken] to prepare a defense thus shifting the burden of preparing the entire case for the defense to [newly retained counsel] . . .", inasmuch the record is devoid of any evidence, direct or circumstantial, supporting this contention.

■ The standard for effective assistance of counsel is well established in this circuit. In *United States v. Dingle*, 546 F.2d 1378 (10th Cir. 1976), we said:

> Dingle contends that he was denied his right to counsel as guaranteed by the Sixth Amendment because his trial counsel was incompetent. A specific hearing was held by the trial court on this issue following remand.
>
> At the competency hearing, Dingle and his wife testified that Dingle repeatedly requested his trial counsel that he be permitted to take the stand. His trial counsel testified that his trial strategy was to attack the credibility of the government witnesses, [R., Vol. I, Supp., p. 17], and that he did not recommend that Dingle testify nor did he contact a witness, Mrs. Bean, because, in his judgment, she was not helpful to the defense strategy. The trial court found that counsel was competent. This finding must be given added weight in light of the fact that the court had an opportunity to view, hear, and observe the witnesses. *United States v. 79.95 Acres of Land,*

*More or Less, in Rogers county, State of Oklahoma,* 459 F.2d 185 (10th Cir. 1972).

Dingle would have us adopt a new standard for determining the competency of counsel. He urges that the test for competent counsel should be whether the representation ". . . [is] reasonably likely to render and rendering reasonably effective assistance." *People v. Gonzales,* 543 P.2d 72, 74 (Colo.App.1974).

This court has long held that representation is competent unless it "was perfunctory, in bad faith, a sham, a pretense or without adequate opportunity for conference or preparation." *Johnson v. United States, supra* [485 F.2d 240 (10 Cir.)]; *Tolhurst v. United States,* 453 F.2d 432 (10th Cir. 1971); *United States v. Baca,* 451 F.2d 1112 (10th Cir. 1971), *cert. denied,* 405 U.S. 1072, 92 S.Ct. 1524, 31 L.Ed.2d 806 (1972); *Ellis v. State of Oklahoma,* 430 F.2d 1352 (10th Cir. 1970), *cert. denied,* 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971). The rule is alive and well in this circuit.

546 F.2d, at 1384–1385.

Applying this standard, we hold that Morgan was not denied effective assistance of counsel. Effective assistance of counsel cannot be equated with victorious or flawless counsel. *Brady v. United States,* 433 F.2d 924 (10th Cir. 1970). In our view Morgan was represented by able trial counsel. His allegation of ineffective assistance of counsel is frivolous and without merit. Finally, we observe that even had Morgan's then retained counsel undertaken "little or no action" between December, 1974 and August, 1975, thereby rendering *his* representation a sham, farce, or mockery as now contended, (a) it did not extend to or affect the representation at trial, and (b) Morgan must assume the fault for any failure of his trial counsel to exercise greater diligence inasmuch as counsel was retained in each instance. This is particularly applicable when we consider that Morgan learned that his originally retained counsel was to be appointed to a judgeship almost two months prior to the trial date.

(b)

■ Riebold contends that the trial court refused to allow his appointed counsel sufficient time to prepare for trial. His counsel was appointed on July 10, 1975. Accordingly, he had more then eight weeks to prepare for trial. Riebold submits no specific proof of prejudice, but rather a "shotgun" general allegation that the case was extremely "complex" and that "It is better for the wheels of justice to grind slowly and finely than for them to grind rapidly but crush the right of the accused in the process.'

■ We hold that Riebold's appointed counsel had adequate time to prepare his defense, thus assuring that the wheels of justice were able to grind rapidly without crushing the rights of the accused. However, even had there been inadequate time for his counsel to prepare, the fault. rests squarely with Riebold.

Riebold had the services of retained counsel until April 14, 1975. At that time, his attorneys were allowed to withdraw because of Riebold's failure to cooperate with them in the preparation of his defense. From that date until July 10, 1975, when the trial court appointed counsel for him, Riebold continually reassured the trial court that he would obtain counsel, that he was in the process of "hiring one right now," and that "I have about completed negotiations with my attorney." Where, as here, appellant's dilatory tactics are the sole cause for the delay in obtaining counsel, it cannot be held that the trial court abused its discretion in denying a motion for a continuance. In *United States v. Curry,* 512 F.2d 1299 (4th Cir. 1975), *cert. denied,* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975), the Court pertinently observed:

. . . Curry's counsel argues that he did not have adequate time in which to prepare a defense. The record demonstrates that Curry made no effort to retain trial counsel between August 20, 1973, at which time he retained counsel for purposes of representation at arraignment only, and November 27, 1973, just seven days prior to trial when he employed his present counsel. Had Curry

acted with reasonable dispatch in employing counsel for trial, no continuance need have been requested. Where the defendant has unreasonably delayed retention of counsel to represent him and such delay is the sole result of defendant's dilatory tactics it is not an abuse of discretion to deny a request for continuance based upon an allegation that additional time would be "helpful" in preparing a defense. In any event, defense counsel did have seven days for preparation. We find no merit in this assignment of error. 512 F.2d, at 1302.

██ Riebold also contends that he was denied effective assistance of counsel because his appointed counsel had to represent him while suffering severe pain and while under the influence of medicine. Riebold states that his trial attorney, "feeling the effects of the intense pain and the drug taken to relieve that pain, did not effectively represent him." We hold that this contention is not supported by the record.

Riebold's trial attorney did notify the trial court that he was having back pains and that he was taking medicine for this condition. However, he also informed the court that a continuance was not necessary and that the medicine would not impair his ability to represent Riebold, evidenced by the following colloquy:

THE COURT: Let me ask you a question: would it help you if the Court would allow you to remain seated while you—

MR. DEATON: No, Your Honor, I don't think that would help, I appreciate that, but I don't think that would help. This is something I haven't had trouble with in approximately five years in any real acute nature. I have had one week in this trial where I wore a brace, and was kind of limping around, but it was sufficiently severe this morning, I did want to bring it to the attention of the Court.

Because if I can't control the symptoms of it, I can't function.

THE COURT: Well, the only thing I know to do is for you to just tell the Court, and we will declare a recess.

MR. DEATON: I will.

MR. HARTZ: May I ask the question, will the pain killer dull your mind?

MR. DEATON: I am not representing that the amount of codeine that I would be taking will sufficiently impair me to continue.

[R., Vol. XXIV, pp. 4079–4080.]

Riebold's trial counsel advised the court that he would be able to proceed with the trial and afford Riebold effective legal assistance. The record does not contain any further reference to counsel's physical condition even though the trial lasted at least ten days beyond the colloquy, *supra*. Under these circumstances, and in view of the very able defense afforded Riebold, we cannot accept Riebold's suggestion, advanced and orally argued by his appellate counsel, that we, in effect, look beyond the record in accepting Riebold's personal "diagnosis" of his trial counsel's physical condition, together with some invidious effect upon his mental capacities resulting from the use of codeine, *supra*.

Even though appellate counsel do not advocate utilization of this circuit's standard for effective assistance of counsel, *supra*, the allegation on appeal is, in effect, that the retained counsel for Morgan, prior to trial, and Riebold's appointed trial counsel were so ineffective that they rendered the trial a sham, a mockery and a farce. These allegations are wholly frivolous and without merit. We do not look with favor on these bald, unfounded appellate arguments.

## II.

██ Appellants contend that the trial court erred in refusing to grant a mistrial when FBI Agent Behrenz, a certified public accountant, stated on direct examination that the "first count in the indictment . . . refers to one of the kickbacks to Donald Morgan." Defense counsel objected immediately to the use of the word "kickback," alleging that it was highly prejudicial and that its usage mandated a mistrial. The trial court promptly ordered that the

testimony be stricken and that the agent should "start over again" in his testimony.

Count I of the indictment states, in part:

. . . DONALD T. MORGAN . . for endeavoring to procure and for procuring a loan in the amount of $200,000 . . . did stipulate for, agree to receive, and receive for his personal use a fee, commission, and thing of value, to-wit: $10,000.

This count clearly charges a "kickback." "Kickback" is defined in *Ballentine's Law Dictionary*, p. 700, (3rd Ed. 1969), as including "the payment of money or property to an individual for causing his employer . . . to deal otherwise with, the person making the payment."

In *United States v. Engle,* 458 F.2d 1017 (8th Cir. 1972), the Court upheld the refusal to grant a mistrial when a government agent referred to unreported payments as "kickbacks":

Appellant next complains because the court denied his motion for a mistrial when a witness for the Government, in response to a question on direct examination, referred to the payments received by appellant as "kickbacks." The court, upon motion, ordered the question and answer stricken and admonished the jury to disregard both. However, appellant's motion for a mistrial was denied. We are satisfied the incident did not require a mistrial. Indeed, we suspect the agent's use of the term "kickbacks" was warranted. In any event, no prejudice resulted. 458 F.2d, at 1020.

We hold that the use of the term "kickback" did not warrant the trial court's grant of a mistrial. This is particularly true where, as here, the term had been used a dozen times in the Government's opening statement without objection. Furthermore, testimony of the conversation objected to related simply to Count I. Error, even if present, could rise no higher than harmless error because appellants were sentenced to concurrent sentences on numerous counts. Thus, error relative to one count which is unrelated to other counts, as here, could not effect the sentences. *United States v.*

*Gamble,* 541 F.2d 873 (10th Cir. 1976); *United States v. Smith,* 532 F.2d 158 (10th Cir. 1976).

### III.

Morgan contends that the trial court erred in allowing the jurors to take notes during the trial and that a mistrial should have been granted. The trial court allowed the jurors to take notes after one juror requested permission to do so. The court did so because of the complexity of the case, and then only after a majority of the jurors indicated their desire to take notes. Although Morgan now contends that the trial court's admonitions to the jury relative to notetaking were inadequate, he failed to offer any suggestions or admonitions on notetaking to the trial court at the time the matter arose.

 This Court has not ruled on the propriety of notetaking by jurors. While some circuits have differed on this issue, the recent trend is to allow notetaking under the guidance of the trial court. That trend is well stated in *United States v. Braverman,* 522 F.2d 218 (7th Cir. 1975), *cert. denied,* 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975):

The decision to allow a jury to take notes as well as the procedure used for such note-taking are also matters within the sound discretion of the district court. *United States v. Marquez,* 449 F.2d 89, 93 (2d Cir. 1971), *cert. denied,* 405 U.S. 963, 92 S.Ct. 1173, 31 L.Ed.2d 239 (1972); *United States v. Pollack,* 433 F.2d 967 (5th Cir. 1970). We find no abuse of discretion here. Since the jury here requested that they be permitted to make notes during the playing of the tape, the defendant's reliance on *United States v. Standard Oil Co.,* 316 F.2d 884 (7th Cir. 1963), is inapposite. 522 F.2d, at 224.

We believe that the rule applied in *Braverman, supra,* is the logical approach. The ultimate purpose to be served is that of aid and assistance to the jurors. It is well known that judges and trial attorneys, trained by experience and practice in the

art of noting important, relevant facts freely avail themselves of the opportunity of notetaking. The *Braverman* rule is analogous to our holding that the trial court may allow the submission of papers, documents, or articles to the jury during the course of its deliberations, whether admitted or not, in order to guide and assist the jury in understanding and resolving factual controversies. *United States v. Downen,* 496 F.2d 314 (10th Cir. 1974), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). In *Downen, supra,* we stated:

> We have held that it is within the discretion of the Trial Court, absent abuse working to the clear prejudice of the defendant, to permit the display of demonstrative or illustrative exhibits admitted in evidence both in the courtroom during trial and in the jury room during deliberations. *Taylor v. Reo Motors, Inc.,* 275 F.2d 699 (10th Cir. 1960); *Ahern v. Webb,* 268 F.2d 45 (10th Cir. 1959); *Millers' National Insurance Company, Chicago, Illinois v. Wichita Flour Mills Company,* 257 F.2d 93 (10th Cir. 1958); *Carlson v. United States,* 187 F.2d 366 (10th Cir. 1951).
>
> 496 F.2d, at 320.

> \*　　\*　　\*　　\*　　\*　　\*

> To the same effect, we hold that the submission of papers, documents or articles, whether or not admitted in evidence, to the jury for view during trial or jury deliberations, accompanied by careful cautionary instructions as to their use and limited significance, is within the discretion accorded the Trial Court in order that it may guide and assist the jury in understanding and judging the factual controversy. *Shane v. Warner Mfg. Corp.,* 229 F.2d 207 (3rd Cir. 1956), dismissed, 351 U.S. 959, 76 S.Ct. 860, 100 L.Ed. 1481 (1956); *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395, 68 A.L.R.2d 761; 5B C.J.S. Appeal and Error § 1782, 89 C.J.S. Trial § 467.
>
> 496 F.2d, at 321.

Applying these standards to the circumstances of this case, we hold that the trial court did not abuse its discretion in allowing the jurors to take notes. The trial court properly admonished the jurors as to the manner in which they were to take and use notes:

> THE COURT: All right. We will give each of you a stenographer's notebook, and a pencil, and if any of you have reason to have your pencils sharpened, we have a pencil sharpener in the office and the bailiff can sharpen your pencil for you.
>
> Now, I want to make certain admonitions to you. That is, that whatever you put down is confidential. In other words, you can't go out into the jury room and discuss it with each other until the case is submitted to you. In other words, you are not to discuss this case in the jury room or elsewhere.
>
> If any notes have been taken in the jury room up to now, they are to be kept confidential. In other words—well, you can see what I am talking about.
>
> Another thing, I don't want note-taking to distract you from hearing the evidence. If you would make your notes at some lull in the proceedings, or when you retire to the jury room, or something, it would be better than to have you distracted.
>
> Of course, if there's some date or something you have to put down while the case is going on, why, that's all right. But I just didn't want this note-taking to distract any of you from hearing the evidence.
>
> Do you all have a note book now and a pencil?
>
> [R., Vol. IX, pp. 1287–1288.]

### IV.

Morgan contends that the 84 count indictment returned was patently biased and embarrassing to all defendants. He contends further that it caused great confusion in the minds of the jury, led the jury to infer guilt, and constituted a misjoinder of crimes and defendants. Morgan's "broadside" challenge is that it "does not require one trained in the law to conclude that the 84 count indictment . . . is patently un-

fair, prejudicial and a constitutional travesty to defendant's rights . . . ". He also urges that "legal citations need not be made to support the statement that such an indictment as is found herein must be shown to have embarrassed and prejudiced the defendants in their defense . . . ".

■ Morgan's attack seems to contend that the trial court erred in refusing to sever the counts and the defendants for trial. We hold that the trial court did not err. The granting of a motion to sever is a discretionary matter which will not be set aside, absent an abuse of discretion. Mutual participation of defendants in an offense or series of offenses is considered a logical, basic ground for refusing to grant a motion to sever. In *United States v. Walton et al.,* 552 F.2d 1354 (10th Cir. 1977), we said:

. . . One moved for severance prior to trial. We held that a motion for severance is directed to the sound discretion of the trial court, citing to *United States v. Rodgers,* 419 F.2d 1315 (10th Cir.1969). We there held that refusal to grant such a motion is error only when that discretion has been abused. In *Davis,* [*United States v. Davis,* 436 F.2d 679 (10th Cir.)] as in *Rodgers,* we noted that Fed.Rules Cr.Proc. 8(b), 18 U.S.C.A. permits the joinder of two or more defendants in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses . . . ."

[P. 1359.]

*See also: United States v. Branker,* 395 F.2d 881 (2nd Cir. 1968), *cert. denied,* 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 573 (1969), where the court upheld the denial of a motion to sever applicable to two of eight defendants named in eighty (80) substantive counts.

■ Joinder of defendants and counts in the case at bar was proper. In *United States v. Eagleston,* 417 F.2d 11 (10th Cir. 1969), we stated:

Eagleston complains of a misjoinder of offenses under Fed.R.Crim.P. 8(a). Fau-

bian complains of a misjoinder of defendants under Fed.R.Crim.P. 8(b).

This court has held the joinder of offenses proper if they are of the same character. *Hoover v. United States,* 268 F.2d 787 (10th Cir. 1959); *Mills v. Aderhold,* 110 F.2d 765 (10th Cir. 1940); *Archambault v. United States,* 224 F.2d 925 (10th Cir. 1955). Therefore the misjoinder claim of Eagleston is without merit.

Under Fed.R.Crim.P. 8(b) when there is a joinder of defendants and offenses totally unconnected, there is no room for judicial discretion and the court must grant severance. *Ingram v. United States,* 272 F.2d 567 (4th Cir. 1959). In this case Eagleston participated in the offenses charged in all three counts, however, it is without question that Faubian participated only in counts two and three. Therefore, there was no misjoinder of offenses regarding Eagleston but there was a misjoinder of defendants in regard to Faubian and the conviction of Faubian must be reversed and remanded to the trial court for further proceedings. The government argues that since counts two and three were properly joined to count one under Rule 8(a), the joinder of Faubian was proper. Rule 8(a), however, does not apply in cases where more than one defendant is joined in the same indictment. Such joinder is governed by Rule 8(b). . . .

417 F.2d, at 14.

■ We recognize that whenever defendants are tried jointly on a multicount indictment there is a remote possibility that the jury may infer guilt on all the counts garnered simply from a finding of guilt on one of the counts. This conjectural possibility should not, however, dictate nonuse of multicount indictments under proper circumstances. *United States v. Meriwether,* 486 F.2d 498 (5th Cir. 1973), *cert. denied,* 417 U.S. 948, 94 S.Ct. 3074, 41 L.Ed.2d 668 (1974). Where the evidence overlaps and the offenses are similar, such as here, and the operable events occurred within a relatively short span of time, joinder of offenses is proper. *United States v. Riley,*

530 F.2d 767 (8th Cir. 1976); Fed.Rules Cr.P. Rules 8(a), 14, 18 U.S.C.A.

 Morgan complains that Count 70, which is a lengthy, detailed conspiracy charge, should not have been included within the indictment. His complaint is without merit. A conspiracy count may be charged in an indictment together with separate counts charging substantive offenses. In *United States v. Cooper*, 464 F.2d 648 (10th Cir. 1972), *cert. denied*, 409 U.S. 1107, 93 S.Ct. 902, 34 L.Ed.2d 688 (1973), we said:

> . . . The first improper joinder asserted is that of including the conspiracy charge and the separate substantive offenses together in the indictment. It is a general rule that "a conspiracy count may properly be joined with substantive counts where it is alleged and shown that the offenses are of the same or similar character and are based upon two or more acts or transactions connected together or constituting parts of a common scheme or plan." *Miller v. United States*, 410 F.2d 1290 (8th Cir. 1969), cert. denied, 396 U.S. 830, 90 S.Ct. 81, 24 L.Ed.2d 80. Inclusion in the indictment of the conspiracy count and the separate substantive counts was not improper under F.R. Crim.P. Rule 8(a).

464 F.2d, at 654.

### V.

 Morgan contends that the trial court erred in instructing the jury that the bank's "full knowledge and consent" of the loans he made would be a defense available to him. Morgan did not object to the instruction given at trial. On appeal, however, he argues that the trial court should have instructed that a defense was available to him if the bank had "knowledge or consent" of the loans. Morgan's contentions are both untimely and without merit. In *United States v. MacClain*, 501 F.2d 1006 (10th Cir. 1974) we observed:

> The trial court also erred, it is asserted, by giving certain instructions which had a prejudicial effect and by failing to give a specific instruction on 18 U.S.C. § 2. Our search of the record does not disclose

that MacClain either requested a specific instruction regarding § 2 or that he objected to the instructions that were given. He therefore is barred from raising any such arguments under Rule 30, F.R. Crim.P. That rule states, in part:

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. *See also, United States v. Wheeler*, 444 F.2d 385 (10th Cir. 1971); *Lucero v. United States*, 311 F.2d 457 (10th Cir. 1962), cert. denied, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767.

501 F.2d, at 1012.

*See also: United States v. Day*, 533 F.2d 524 (10th Cir. 1976); *United States v. Ray*, 488 F.2d 15 (10th Cir. 1973).

 Riebold contends that the trial court erred in giving an instruction on conspiracy. The record reflects that the trial court not only gave the standard conspiracy instruction but that it was, in fact, the very instruction requested by Riebold. Under these circumstances, even had the instruction been erroneous, which is not the case, Riebold could not now raise the challenge. A defendant cannot complain of error which he invited upon himself. *Hanks v. United States*, 388 F.2d 171 (10th Cir. 1968); *O'Neal v. United States*, 240 F.2d 700 (10th Cir. 1957); *Head v. United States*, 199 F.2d 337 (10th Cir. 1952), *cert. denied*, 345 U.S. 910, 73 S.Ct. 642, 97 L.Ed. 1345 (1953).

### VI.

We have carefully considered the remaining allegations of error raised by appellants. We hold that they are individually and collectively without merit.

WE AFFIRM.